Nancy L. **BIGJOE**, Appellant,

v.

**PIONEER AMERICAN INSURANCE
COMPANY**, Appellee.

No. 26677.

United States Court of Appeals,
Ninth Circuit.

July 29, 1971.

John La Londe (argued), of Boettcher, La Londe, Kleweno, Lodge & Ladley, Vancouver, Wash., for appellant.

Edward Starin (argued), Larry M. Carter, Preston, Thorgrimson, Starin, Ellis & Holman, Seattle, Wash., for appellee.

Before JERTBERG, ELY, and KILKENNY, Circuit Judges.

ELY, Circuit Judge:

The appellant, Nancy Bigjoe, is the surviving spouse of John S. Bigjoe and the named beneficiary under a life insurance contract that had existed between her husband, the insured, and the appellee insurer (Pioneer). Pioneer, a Texas company qualified to do business in the State of Washington, had issued a policy upon the life of the insured in the amount of $10,000 with a provision for double indemnity in the event of his accidental death. The insured was required to pay monthly premiums of $20.-69 which were due on the fourteenth day of each month. The policy granted a thirty-one day period of grace in which

to pay an overdue premium, and specified that "[f]ailure to pay any premium when due or within the period of grace provided shall cause this Policy immediately to become void * * *."

The policy was issued on May 14, 1967. The insured did not meet the premium which was due on February 14, 1969, but on March 10th thereafter, the appellant mailed a check covering premiums for both February and March. This check was presented for payment on March 19th, and was returned to Pioneer with the bank's notice of its dishonor for insufficient funds (NSF). This check was a conditional payment and did not, of course, constitute payment until honored. Pioneer again presented it for payment on April 2d, and once more it was returned for lack of sufficient funds. A few days later, on April 9th, the insured died by accidental means. Within a few hours thereafter, on the same day, the appellant mailed a money order for the two past due premiums to Pioneer. Pioneer declined to accept the money order, treating the policy as having lapsed. The appellant then instituted suit in the District Court. That Court, undertaking to apply the applicable law in the diversity action, could find no just basis for the imposition of liability upon Pioneer; hence it dismissed the appellant's claim on the merits.

On appeal, the appellant argues that the law of Washington rather than of Texas should apply and that Pioneer's conduct, its retention of the NSF check and its second attempt at collection after the grace period, amounted either to a waiver of its rights or estopped it from claiming that the policy had lapsed. The doctrine of estoppel is clearly inapplicable, since Pioneer did nothing of which the insured or his wife were aware and upon which they relied to their detriment. Such reliance is one of the four indispensable elements of estoppel. *See* Bequette v. National Insurance Underwriters, Inc., 429 F.2d 896, 900 (9th Cir.1970).

On the issue of waiver, the district judge carefully reviewed the facts with which he was presented, including the explicit terms of the contract. Under those facts, Pioneer had no duty to disclose that the check had been returned NSF nor to redeposit the check, the insured had knowledge that failure to remit premium payments as specified in the contract would result in a forfeiture, and he and his wife had equal or greater access to the knowledge that the check would or would not be honored upon presentation. There is the suggestion, too, that the appellant perhaps undertook to mislead Pioneer in making her final, belated tender. In these circumstances, we think the District Court properly held that Pioneer had not waived its rights, and we believe our conclusion in this respect finds support in the law of Washington, as well as that of Texas. We quote, with approval, a portion of Judge Boldt's dispositive reasoning:

"In the circumstances, even if it be assumed, without so deciding that the redeposit of the NSF check amounted to a waiver or estoppel, when that check for a second time was dishonored by the drawee bank for insufficient funds to pay it, any possible waiver or estoppel that had arisen up to that point was terminated by the second nonpayment of the check."

"It is clear beyond question that when payment of that check was refused and dishonored by the bank for the second time on the 3rd of April, six days prior to the death of Mr. Bigjoe, that again indisputably effected a second lapse, and there being no action by defendant subsequent to that time that in any way whatever could give rise to a claim of either waiver or estoppel, the lapse was fully effective not later than the 3rd of April 1969, six days prior to the insured's death."

In an appeal from a judgment in a diversity case, we are required, of

course, to accord much deference to the opinion of the district judge with respect to the law of the state in which he sits. *See, e. g.,* Turnbull v. Bonkowski, 419 F.2d 104, 106 (9th Cir.1969); Owens v. White, 380 F.2d 310, 313 (9th Cir. 1967).

Affirmed.