**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Curtis Howe SPRINGER (a/k/a Curtis H. Springer) and Helen Springer, husband and wife, et al., Defendants-Appellants.**

**No. 71–2309.**

United States Court of Appeals, Ninth Circuit.

Nov. 30, 1972.

Rehearing Denied March 5, 1973.

for ejectment, an injunction, and damages in connection with defendants' use of their unpatented mining claims on real property owned by the United States in San Bernardino County, California.

The United States moved for a partial summary judgment permanently enjoining defendants from using the real property in question for any purpose other than prospecting, mining or processing of minerals, and uses reasonably incident thereto. The district court held that while the Government was not entitled to a permanent injunction at that stage of the proceedings, it "may well be entitled to an injunction pendente lite" enjoining defendants from using the property for non-mining and non-prospecting purposes. United States v. Springer, 321 F.Supp. 625, 627 (C.D.Cal.1970).

The court noted in its opinion that, for many years, defendants have been using the property for the purpose of operating a resort hotel with related facilities, for the manufacture of "health" foods, and for such other purposes as the preparation of printed materials and tape recordings for radio broadcasts. The court also observed that defendants were maintaining on the property "four guest-room buildings aggregating 59 units, a dining room with kitchen facilities, an administration building, a chapel-meeting room, indoor and outdoor mineral baths, a number of out buildings, electrical facilities and various other structures and facilities." 321 F.Supp., at 626.

The district court entered the partial summary judgment on December 18, 1970. In reliance thereon the Government, on December 29, 1970, filed a motion for an injunction pendente lite. Such an injunction was entered on June 18, 1971. It enjoins defendants pending disposition of the action or further order of the court from engaging in ten classified activities, as set out in the

George W. Nilsson (argued), Monta W. Shirley, Los Angeles, Cal., for defendants-appellants.

Carl J. Strass, Atty. (argued), Edmund B. Clark, Atty., Kent Frizzell, Asst. Atty. Gen., Washington, D. C., Ernestine Tolan, Asst. U. S. Atty., William D. Keller, U. S. Atty., Los Angeles, Cal., for plaintiff-appellee.

Before HAMLEY and WRIGHT, Circuit Judges, and POWELL,* District Judge.

PER CURIAM:

The United States brought this action against Curtis Howe Springer and others

---

* The Honorable Charles L. Powell, United States District Judge for the Eastern District of Washington, sitting by designation.

margin.[1] Defendants have appealed from the entry of this injunction pendente lite.

An injunction pendente lite is, in essence, a preliminary injunction. *See* Rule 65, Fed.R.Civ.P. "Ordinarily, the grant or denial of a preliminary injunction is a matter within the discretion of the district court, and it will not be reversed absent an abuse of that discretion." Douglas v. Beneficial Finance Co. of Anchorage, 469 F.2d 453 (9th Cir. 1972).

Defendants present a variety of arguments why the district court erred in entering the injunction pendente lite. Insofar as they pertain to the limited issues relevant here as to what use one who has unpatented mining claims may make of the land, and whether these claimants are making impermissible use of such lands, we think these arguments are fully answered in the opinion of the district court. We adopt the district court's reasoning as our own, reject defendants' arguments, and hold that the district court did not abuse its discretion.

We have set out above only the tip of the iceberg with regard to the proceedings which have been had, or are in progress, concerning this controversy.[2]

1. Defendants are enjoined, pending disposition of the action or further order of the court, from:

"1. Letting, renting or leasing rooms, quarters or facilities to any person or persons, or entity or entities, not engaged in the prospecting for, mining or processing of minerals and uses reasonably incident thereto.

"2. Inviting or permitting, or in any manner inducing, any person or persons, whether or not for money, to come onto or be on said real property and premises or to live on said real property and premises other than those persons employed or acting in the prospecting for mining or processing of minerals and uses reasonably incident thereto.

"3. Operating, using, maintaining, repairing or constructing any improvements, buildings, structures, fixtures, facilities or equipment of any kind on said real property and premises, except such as are used in the prospecting for, mining or processing of minerals and uses reasonably incident thereto, and operating an electrically driven hammer mill referred to as the 'grist mill.'

"4. Building, maintaining or repairing roads or airplane landing strips or runways on said real property and premises, for any use other than in the prospecting for, mining or processing of minerals and uses reasonably incident thereto.

"5. Preparing, mixing, blending, packaging, or preparing for mailing, selling or giving away, or receiving contributions for any food, foods or food products on said real property and premises, whether known by the name Basic Foods, Basic Food Products, Zzyzx or Zzyzx Brand, or any other name.

"6. Preparing, printing, binding, distributing, or preparing for mailing, at said real property and premises, any written or graphic material of any kind whatever, however produced or reproduced, except insofar as the same is used in the prospecting for, mining or processing of minerals and uses reasonably incident thereto.

"7. Preparing, recording, reproducing, distributing, or preparing for mailing, at said real property and premises, any sound recordings of any kind whatever, for radio broadcast or otherwise.

"8. Constructing, using, maintaining, operating or repairing, any pools, lakes, baths or devices of any kind to contain water on, in or under said real property and premises, except insofar as the same may be used in the prospecting for, mining and processing of minerals and uses reasonably incident thereto.

"9. Drilling or in any manner constructing any wells on, in or under said real property and premises, or using, operating, maintaining or repairing any presently existing wells thereon, therein or thereunder, except insofar as the same is used in the prospecting for, mining or processing of minerals and uses reasonably incident thereto.

"10. Extracting, mining, processing or using sand and gravel found on said real property and premises for the purposes of operating, maintaining, repairing or constructing improvements, buildings, structures, fixtures or facilities of any kind on said premises, except insofar as is necessary in the prospecting for, mining and processing of minerals and uses reasonably incident thereto."

2. There are now pending before the Department of the Interior two complaints in contests filed by the Bureau of Land Management against the mining claims here in

It is to be expected that defendants will, as they have in the past, seek stays from any available court or judge in an effort to keep their operations on these Government lands in progress as long as possible. For the assistance of any court or judge which is hereafter asked to grant such a stay, we here set out in the margin the long history of such efforts in this court to date.[3]

The stay entered on October 16, 1972, is vacated. The order granting an injunction pendente lite is affirmed.

## ON PETITION FOR REHEARING AND SUGGESTION FOR REHEARING IN BANC

The petition for a panel rehearing is denied.

Pursuant to Rule 35(b), Federal Rules of Appellate Procedure, appellant's suggestion for a rehearing in banc was transmitted to the judges of the court who are in regular active service. One such judge requested a vote on the suggestion, but only this judge voted for an in banc rehearing. The suggestion for a rehearing in banc has therefore been rejected.

CHAMBERS, Circuit Judge (dissenting from the refusal of the court to take the case en banc).

Springer is operating some kind of a health spa on mining claims on government land.

This involves several buildings built on the claims and the use of some spring water claimed to contain health-giving minerals. It is not contended the business is an unlawful one.

What the panel has done is to approve the granting of a temporary injunction where no final judgment or decree has been entered. No threatened irreparable injury was ever proved. Certainly by final judgment a landowner is entitled to have one adjudged to be on the land improperly and is entitled to have the defendant put off by mandatory injunction, but not now.

What we do is to approve the practice of giving the government "two bites at the cherry,"—one is on preliminary in-

issue. There have also been contempt proceedings in the district court, and an eviction order. Springer has made several attempts to obtain title or possession under non-mining laws, as follows: Desert Land Application—Los Angeles Nos. 087266 and 087267, July 12, 1951, finally rejected in Decision A–27305, September 25, 1957; Recreation and Public Purposes applications Nos. LA–0153617 and LA–0158843, November 14, 1957, and June 17, 1958, final appeal dismissed November 18, 1964; non-mineral application No. R–07418, January 10, 1966, appeal denied April 28, 1970.

Springer has been convicted of various offenses in connection with the use of these lands, some on pleas of guilty. These convictions include eighteen counts of false advertising concerning remedies for hemorrhoids, heart disease, "nerves," thyroid and goiter; and violations of the California State Health and Safety Code pertaining to misbranding foods.

3. On August 19, 1971, a judge of this court granted Springer a stay of the district court injunction pendente lite, to September 2, 1971. On August 26, 1971, a two-judge panel of this court granted Springer a further stay, reserving the right of the Government to move for reconsideration. The Government moved for reconsideration and, on September 9, 1971, a two-judge panel of this court denied reconsideration. Early in 1972, the Government renewed its motion to lift the stay of the district court's injunction. On January 31, 1972, a two-judge panel of this court set aside the stay.

On February 10, 1972, a two-judge panel of this court denied Springer's motion to stay the district court injunction. On February 18, 1972, the same panel denied Springer's renewed petition for a stay. On September 5, 1972, another two-judge panel of this court denied Springer's motion to stay district court contempt hearings, but expedited the hearing of this appeal. On October 6, 1972, the district court entered an order of eviction from the premises, except as to those engaged in mining operations including maintenance work and cooking for workers. On October 16, 1972, a judge of this court stayed the enforcement of the eviction order pending the hearing of the appeal calendared for November 1, 1972.

junction and the second is on trial on the merits.

There was no balance of convenience here in favor of government. Any damage done was when the establishment was erected. It is not suggested that any real damage has been done since then.

Although the case is not mentioned, the panel has quietly overruled such cases as McCarthy v. Bunker Hill and Sullivan Mining and Concentrating Company, 164 F. 927 (9th Cir. 1908), a case that has stood for 65 years. There, mines were polluting the Coeur d'Alene River. On a temporary injunction request, this court said "no." Comparatively the damage in the McCarthy case was horrendous. Here, no present damage is shown.

It is very troublesome that the panel opinion refers to the fact that Springer has been convicted of a number of offenses. I thought the day was long past when we forfeited a man's legal rights because he had been previously convicted of a crime or crimes.